[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15210
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-22662-STB

SANJEEV SIRPAL,

Plaintiff-Appellant,

versus

UNIVERSITY OF MIAMI,
a Florida not for profit corporation,
JAMES D. POTTER, Ph.D.,
JOSE RENATO PINTO, Ph.D.,
CLAUDIA RODRIGUES, Ph.D.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 19, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

This case arises out of Sanjeev Sirpal's dismissal from the University of Miami's (UM) graduate school and medical school. Based on the circumstances surrounding his dismissal, Sirpal filed suit against UM, Dr. James Potter, Dr. Jose Pinto, and Dr. Claudia Rodrigues (collectively Defendants) alleging a variety of claims. A magistrate judge[1] granted summary judgment to the Defendants on Sirpal's claims of racial discrimination (Counts I and III), breach of contract (Count II), defamation (Counts IV, VII, VIII, and IX), and tortious interference (Count X). Sirpal appeals this decision.

After the summary judgment ruling, Sirpal moved to dismiss the two remaining counts of his complaint (Counts V and VI) without prejudice. The magistrate judge granted this motion, but denied his request to equitably toll the statute of limitations as to those counts. Sirpal also appeals this decision.

"This Court reviews the granting of summary judgment de novo, applying the same legal standards which bound the district court." Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999). "Summary judgment is appropriate only when there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Id. (quotation marks omitted). In making this determination, all "evidence must be viewed in the light most

---

[1] The parties consented to jurisdiction before the magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

2

favorable to the party opposing the motion for summary judgment." Blackston v. Shook and Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985).  "The question of whether equitable tolling applies is a legal one [also] subject to de novo review." Cabello v. Fernandez-Larios, 402 F.3d 1148, 1153 (11th Cir. 2005).

## I.    DISCRIMINATION CLAIMS

In Counts I and III, Sirpal brought claims for race discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et. seq., and 42 U.S.C. § 1981, and appeals the grant of summary judgment in favor of the Defendants on these claims.

To establish a violation of either Title VI or § 1981, a plaintiff must show that a challenged action was the result of intentional discrimination on the part of the defendant.  See Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 n. 2 (11th Cir. 1994); Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1405–06 & n.11 (11th Cir. 1993).  The plaintiff may use direct evidence or, in the absence of direct evidence, circumstantial evidence that satisfies the McDonnell Douglas burden-shifting framework.[2]  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330–31 (11th Cir. 1998); 15 Am. Jur. 2d Civil Rights § 389 (2012).

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 1824 (1973).

3

Sirpal argues that he sufficiently established intentional discrimination through both direct evidence and circumstantial evidence. We address each method of proof in turn.

A.

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Standard, 161 F.3d at 1330. Thus, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Id. It is uncontroverted that the only discriminatory remarks Sirpal alleges were not made by the individuals who ultimately decided to dismiss Sirpal from UM's graduate school and medical school, the challenged actions in this case.

Sirpal argues that he has shown direct evidence of discrimination because this is a "cat's paw" case. A cat's paw case is one in which the "harasser employed the decisionmaker as her 'cat's paw'—i.e., the decisionmaker acted in accordance with the harasser's decision without herself evaluating the employee's situation." Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998). "In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's

4

walking papers." Id.  In cat's paw cases, the harasser's statements may be direct evidence of discrimination even though the harasser was a non-decisionmaker. See id.

However, this was not a cat's paw case.  Prior to Sirpal's dismissal from UM's graduate school and medical school, each school conducted some sort of independent investigation.  At the graduate school, the Graduate Committee allowed Sirpal to testify at a hearing before dismissing him from his M.D./Ph.D. program on the ground that he had engaged in misconduct and unethical behavior in the lab he worked in.  When Sirpal appealed this decision, Dr. John Bixby, Associate Dean for Graduate Studies for the medical school, met with the Graduate Committee members, the University Security Officer who had investigated one of the allegations of misconduct, the lab manager, Ms. Jones, and Sirpal.  Therefore, even if Sirpal's supervisor, Dr. Potter, had submitted to the Graduate Committee a report that "rubberstamped" the discriminatory animus of Sirpal's harassers as Sirpal alleges, this is not a cat's paw case because the independent investigation determined that dismissal was, apart from Dr. Potter's recommendation, entirely justified.  See Staub v. Proctor Hosp., ___ U.S. ___, ___, 131 S. Ct. 1186, 1193 (2011); cf. Llampallas, 163 F.3d at 1249–50 (analyzing whether plaintiff's Title VII claim was a "cat's paw case" and explaining that "[w]hen the employer makes

5

an effort to determine the employee's side of the story before making a tangible employment decision affecting that employee . . . it should not be held liable . . . for that decision based only on its employee's hidden discriminatory motives").

Similarly, the medical school conducted an independent investigation, which included hearing Sirpal's side of the story, before dismissing Sirpal from its program. After he was dismissed from the graduate school, questions arose regarding the source of data Sirpal used in an article he co-published with Dr. Potter. UM's Vice Provost for Research initiated a scientific misconduct investigation concerning the data. A Preliminary Investigative Committee, Full Investigative Committee and a forensic examining company investigated Sirpal's potential research misconduct and considered oral and written testimony by Sirpal, interviews, and other evidence. During these investigations Sirpal was placed on a mandatory leave of absence based on the allegations of misconduct underlying his dismissal from the graduate school. After a thorough investigation, the Medical Education Administration dismissed Sirpal from the medical school, citing unprofessional conduct as its reason.

Thus, Sirpal did not show direct evidence of discrimination which caused the adverse action.

6

B.

When a discrimination claim is supported by circumstantial evidence, the district court may analyze the case using the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03,  93 S. Ct. 1817, 1824 (1973).  Under the McDonnell Douglas framework, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his prima facie case.  Id. at 802, 93 S. Ct. at 1824.  If the plaintiff presents a prima facie case and the employer offers a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

Sirpal argues that the magistrate judge erred in determining that he had not established that similarly situated individuals had been treated differently and therefore had not established a prima facie case of discrimination.  Sirpal argues that he was treated differently than Dr. Potter and Dr. Pinto and that those two individuals were similarly situated.

This argument ultimately fails.  "When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must

7

be similarly situated in all relevant respects besides race . . . since '[d]ifferent treatment of dissimilarly situated persons does not violate' civil rights laws." Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1273 (11th Cir. 2004) (internal citations omitted).  Neither Dr. Potter nor Dr. Pinto is "similarly situated in all relevant respects besides race." Id.

First, Sirpal argues that he was similarly situated to Dr. Potter because they were co-authors of the article that was the subject of a research misconduct investigation and were both investigated by UM.  Sirpal was subjected to a mandatory leave of absence while the investigation was pending and Dr. Potter was not.  But, contrary to Sirpal's argument, he and Dr. Potter were not similarly situated.  Sirpal was placed on a mandatory leave of absence from the medical school in significant part based on the same allegations that had already led to his dismissal from the graduate school, and which the medical school was independently investigating.  There is no indication that Dr. Potter was facing other allegations of misconduct separate from the research misconduct investigation.  Also, Sirpal was a student at UM while Dr. Potter was an employee, professor, and Department Chair.  Thus, Sirpal and Dr. Potter had different relationships with UM.  Cf. Lathem v. Dept. of Children and Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999) (explaining that when determining whether individuals were similarly

8

situated "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether . . . [they were] subjected . . . to different employment policies").

Second, Sirpal argues that he was similarly situated to Dr. Pinto. He says that he was treated differently from Dr. Pinto because when he was accused of an ethical violation he was dismissed, but when Dr. Pinto solicited Sirpal "to include him as an author on work he made no contribution toward," an action that was unethical, Dr. Pinto was not even reprimanded. Again, Sirpal was not similarly situated to Dr. Pinto in all relevant aspects. Dr. Pinto was a post-doctorate fellow as opposed to a student, and was therefore subject to a different set of policies than Sirpal. Id.

Because Sirpal failed to show that his dismissal from UM's graduate school and medical school were the result of racial discrimination using either direct evidence or circumstantial evidence, the magistrate judge properly granted summary judgment in favor of the Defendants on the discrimination claims.

## II.    BREACH OF CONTRACT CLAIM

In Count II, Sirpal sued UM for breach of contract on the ground that UM failed to provide Sirpal with "due process," a "fair investigation," and "access to his academic records." Sirpal appeals the magistrate judge's grant of summary judgment in favor of UM on this claim as well.

9

Under Florida law, the legal relationship between a private university and a student is "solely contractual in character." Jallali v. Nova Se. Univ., Inc., 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (quotation marks omitted). The university "may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college." Univ. of Miami v. Militana, 184 So. 2d 701, 704 (Fla. 3d DCA 1966). These terms may be derived from university publications such as the student handbook and catalog. Jallali, 992 So. 2d at 342. "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." Id. at 343.

Sirpal argues that UM was arbitrary and capricious because it: 1) used a procedure different from the one outlined in the Honor Code and Student Handbook to investigate his alleged misconduct, resulting in his arbitrary dismissal from the graduate school; 2) placed him on a leave of absence from the medical school; and 3) withheld his transcripts.

These arguments are also unsuccessful for Sirpal. First, we agree with the magistrate judge that Sirpal has not raised a genuine issue of material fact as to whether UM acted arbitrarily and capriciously in its investigation of Sirpal's

10

misconduct and dismissal of Sirpal from the graduate school.  As explained by the magistrate, "Sirpal has failed to show that any of the procedures he cites in any of UM's documents were mandatory and/or exclusive, and fails to establish that UM's decision to apply [the specific procedure] was arbitrary, malicious, or in bad faith."  Further, because Sirpal was notified of the Graduate Committee's proceedings, Sirpal had an opportunity to be heard, and the Committee's decision was based on substantial evidence, Sirpal was afforded due process.  See Matar v. Fla. Int'l Univ., 944 So. 2d 1153, 1160–61 (Fla. 3d DCA 2006) (discussing the due process required in student disciplinary proceedings).  Sirpal also had the opportunity to appeal the decision of the Graduate Committee.  An Associate Dean then completed a secondary investigation and Sirpal was able to appeal the Associate Dean's affirmance to the Dean of the graduate school and the Graduate Student Appeals Committee.

Second, we agree with the magistrate judge that Sirpal has not raised a genuine issue of material fact as to whether UM acted arbitrarily by placing Sirpal on a leave of absence from the medical school.  The Medical Student Handbook explicitly allows the school to require a mandatory leave of absence "for professional misconduct or other reasons" and the reasons provided by UM "were

11

not arbitrary, based on bad faith or malice." In addition, the medical school followed the procedures outlined in the Handbook related to "Mandatory Leave."

Third, we agree with the magistrate judge that Sirpal has not raised a genuine issue of material fact as to whether UM's decision to withhold his transcripts during the time period alleged was arbitrary and capricious. Dr. Robert Hernandez explained that the transcripts were withheld according to the school's policies, Sirpal's dismissal from the graduate school and the M.D./Ph.D. program, and the uncertain nature of Sirpal's status at the medical school. Dr. Hernandez said it was for these reasons, and to ensure accuracy, that a hold was placed on Sirpal's "official medical school and graduate school transcripts until all investigations and questions regarding [Sirpal's] status were resolved."

Therefore, it was proper for the magistrate judge to grant summary judgment in favor of UM on the breach of contract claim.

## III.    DEFAMATION CLAIMS

In Counts IV, VII, VIII, and IX, Sirpal brought claims against Dr. Rodrigues, Dr. Potter, and UM for defamation. He appeals the magistrate judge's grant of summary judgment in favor of the Defendants on these claims as well.

Under Florida law, to prove a claim of defamation a plaintiff who is a private person must show that the defendant published a false and defamatory

12

statement, that there were actual damages, and that the defendant acted negligently. Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). "Words are defamatory when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." Am. Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (quotation marks omitted).

First, as to Count IV, Sirpal has not shown that Dr. Rodrigues made any false and defamatory statements. Sirpal alleges that two statements are at issue in his claim against Dr. Rodrigues. The first is Dr. Rodrigues' statement to the University Security Officer investigating the unauthorized access of her computer that Sirpal was a person she previously had problems with. We agree with the magistrate judge's assessment that this statement was not a false and defamatory statement because it was made in direct response to the Security Officer's request that Dr. Rodrigues name anyone with whom she had experienced problems with and in her view she had experienced problems with Sirpal. The second statement underlying Sirpal's claim is a statement that Dr. Rodrigues is alleged to have made to Dr. Bixby about Sirpal being the person who accessed her computer without authorization. Sirpal presented no evidence that such a statement was made during the time period alleged in the complaint.

13

Second, Sirpal has not sufficiently supported his Count VII claim that Dr. Potter and UM defamed him by way of statements Dr. Potter made in a memorandum to the Graduate Committee regarding Sirpal's dismissal from Dr. Potter's lab.  Dr. Potter's communication to the Graduate Committee was conditionally privileged under Florida law because Dr. Potter and the Graduate Committee had corresponding interests in starting any investigation that was required based on the serious allegations underlying Sirpal's dismissal from the lab.  See Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984); Jarzynka v. St. Thomas Univ. of Law, 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004).    Therefore, Sirpal "must plead express malice to proceed with his claim."  Jarzynka, 310 F. Supp. 2d at 1268 (footnote omitted).  Sirpal has not provided sufficient evidence of malice to survive summary judgment.

Third, with respect to Count VIII, Sirpal has not shown that Dr. Potter and UM defamed him through statements Dr. Potter made to the Preliminary Investigative Committee during the scientific research misconduct investigation. We agree with the magistrate's conclusion that none of the three statements outlined in Sirpal's complaint support Sirpal's defamation suit: the first statement, as it was actually made by Dr. Potter, was truthful and there is no evidence that the other two statements were made.

14

Last, Sirpal has not shown that Dr. Potter and UM defamed him as alleged in Count IX. In that count, Sirpal alleged that Dr. Potter told the University of Florida that "Sirpal had altered the image that appeared in the [investigated] article." We agree with the magistrate judge that there is no evidence that Dr. Potter ever made a statement that Sirpal had altered the image.

Accordingly, it was appropriate for the magistrate judge to grant summary judgment in favor of the Defendants on the defamation claims.

## IV.    TORTIOUS INTERFERENCE CLAIM

In Count X, Sirpal sued UM and Dr. Potter for tortious interference with Sirpal's business relationship with two other universities, Tufts University and the University of Florida. Sirpal appeals the magistrate judge's grant of summary judgment in favor of UM and Dr. Potter on this claim.

Under Florida law, to succeed on a claim of tortious interference with a business relationship a plaintiff must show: "(1) the existence of a business relationship . . . ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (quotation marks omitted). While the business relationship "need not be evidenced

15

by an enforceable contract," the relationship generally must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id. at 814–15.

The magistrate judge held that Sirpal had not sufficiently demonstrated that he had a business relationship with Tufts to support a tortious interference claim as to that university. Sirpal does not challenge this determination. Sirpal only argues that the magistrate judge erred in determining that he had not demonstrated that UM and Dr. Potter tortiously interfered as to the University of Florida. He asserts that UM interfered by withholding transcripts and that Dr. Potter interfered by "falsely inform[ing] [the University of Florida] that [he] was undergoing research misconduct investigations."

Sirpal does not prevail with this argument. Sirpal has not shown that UM "unjustifi[ably] interfere[d]" with any relationship he had with the University of Florida. See Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). As discussed above, UM's decision to withhold the transcripts from the University of Florida was justifiable.

Further, Sirpal failed to show that any agreement with the University of Florida "in all probability would have been completed" if Dr. Potter had not interfered. Ethan Allen, Inc., 647 So. 2d at 815. The University of Florida's

16

admission was conditioned on the receipt of an acceptable transcript from UM, which it never received.

Therefore, the district court properly granted summary judgment to the Defendants on Sirpal's tortious interference claim.

## V.    EQUITABLE TOLLING

After the magistrate judge entered a judgment in favor of the Defendants on all of these claims, Sirpal moved to voluntarily dismiss his remaining two claims without prejudice.  In its order granting Sirpal's motion, the magistrate judge explained that the dismissal essentially functioned as a dismissal with prejudice because the statute of limitations had expired on the remaining two claims and he would not extend or toll the statute of limitations.  Sirpal's final argument on appeal is that the magistrate judge erred by denying Sirpal's request to toll the statute of limitations.[3]

To the extent that the order granting the motion to dismiss without prejudice addressed whether the statute of limitations could be equitably tolled if Sirpal were

---

[3] Sirpal also argues that the magistrate judge erred by denying his request to stay the remaining claims during the pendency of this appeal because the factual allegations underlying the eight counts on appeal and the two remaining counts were "inextricably linked" and forcing Sirpal to proceed on the two groups of claims separately would have "doubled both time and effort."  It is unclear whether the magistrate judge addressed the issue of a stay.  Even accepting that the magistrate judge did deny a stay, Sirpal has not shown that this denial was an abuse of discretion. See Ortega Trujillo v. Conover & Co. Commc'ns, Inc., 221 F.3d 1262, 1264 n.2 (11th Cir. 2000).

17

to later reassert the claims he was seeking to dismiss, the magistrate judge issued an advisory opinion.  See BankWest, Inc. v. Baker, 446 F.3d 1358, 1367 (11th Cir. 2006) ("If we addressed issues that might arise, we would be rendering an advisory opinion on future conduct and events . . . .").  Article III does not permit courts to issue advisory opinions.  Id.  For this reason, we vacate only the portion of the magistrate judge's order addressing the issue of statutory tolling on a hypothetical future lawsuit as an impermissible advisory opinion.

## VI.    CONCLUSION

For these reasons we affirm the magistrate judge's grant of summary judgment in favor of the Defendants.  We affirm the magistrate judge's grant of Sirpal's motion to dismiss the remaining claims, but vacate the portion of the order addressing the statute of limitations and equitable tolling.

**AFFIRMED in part, VACATED in part.**

18