# Third District Court of Appeal

## State of Florida

Opinion filed October 20, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1281
Lower Tribunal No. 20-121 AP
_____

**Florida International University,**
Petitioner,

vs.

**Samantha Ramos,**
Respondent.


On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Appellate Division, Daryl E. Trawick, Lisa Walsh, and Maria de Jesus Santovenia, Judges.

Marrero & Wydler, and Oscar E. Marrero and Lourdes Espino Wydler, for petitioner.

Andrew M. Kassier, P.A., and Andrew M. Kassier, for respondent.


Before MILLER, LOBREE, and BOKOR, JJ.

MILLER, J.

Petitioner, Florida International University, seeks second-tier certiorari relief from an opinion rendered by the appellate division of the Circuit Court of Miami-Dade County in favor of respondent, Samantha Ramos. In its decision, the lower court quashed a disciplinary order rendered by the Student Conduct Committee (the "SCC") following a final academic misconduct hearing. The opinion concluded Ramos was deprived of due process because she was denied the opportunity to elicit evidence of the bias and motive of a critical witness. The primary issue raised in the petition is whether the circuit court erroneously expanded Ramos's due process rights, in contravention of the governing Student Code of Conduct (the "Code"). Constrained by our standard of review, we deny relief.

## BACKGROUND

The relevant chronology is undisputed. Ramos, a member of the University's Honors College and Quantifying Biology in the Classroom Program, submitted organic chemistry laboratory reports bearing striking similarities to those submitted by current and past students. Suspecting plagiarism, the laboratory teaching assistant reported her conduct to a professor, who, in turn, submitted an academic misconduct report, accompanied by several laboratory reports and documentation detailing

2

plagiarism-related concerns, to the Office of Student Conduct and Academic Integrity.

Following an investigation, Ramos and two other students were charged with plagiarism and provided with different alternatives for resolution of the charges. Ramos elected to proceed before the SCC. A hearing was convened in accordance with the Code, and, during the hearing, Ramos sought to question the teaching assistant regarding incidents bearing on bias and motive.

Ramos alleged she and others observed students potentially cheating on an exam. She reported the matter to the teaching assistant, and, according to Ramos, he responded by stating, "You are going to ruin my entire career, and you know that. I am going to ruin yours." Because this encounter preceded the plagiarism allegations, Ramos contended she was the victim of retaliation. For further support of her theory, she relied upon the fact that she received satisfactory grades throughout the semester on other laboratory reports. Finally, she contended the teaching assistant had tampered with a necessary witness to the disciplinary proceedings, rendering him recalcitrant. Despite the proffer, the hearing officer prohibited any inquiry into these areas.

At the conclusion of the hearing, the hearing officer found Ramos was "responsible for plagiarism" and assigned a written reprimand, grade reductions to zero on the three laboratory reports, and an ethics-related educational activity. Ramos unsuccessfully appealed the decision to the University's Assistant Vice President for Student Affairs. She then sought certiorari review in the Circuit Court of the Eleventh Judicial Circuit. In the first-tier certiorari proceedings, Ramos contended she was deprived of due process. The circuit court granted relief and quashed the decision below, finding "[the University] violated Ramos's due process rights in failing to follow its own rules." This petition ensued.

**STANDARD OF REVIEW**

Second-tier certiorari is not an opportunity for a second appeal. Instead, "[a]s a practical matter, the circuit court's final ruling in most first-tier cases is conclusive, for second-tier review is extraordinarily" narrow. Fla. Power & Light Co. v. City of Dania, 761 So. 2d 1089, 1092 (Fla. 2000). Our "'inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law,' or, as otherwise stated, departed from the essential requirements of law." Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995)); see also

4

Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 725 (Fla. 2012) ("[T]he district court must determine whether the decision of the circuit court . . . is a departure from the essential requirements of law resulting in a miscarriage of justice.").

**LEGAL ANALYSIS**

In the instant petition, the University contends the governing administrative documents compel the conclusion the hearing officer properly exercised discretion in prohibiting questioning into bias or motive. Thus, it reasons, the circuit court departed from the procedures in quashing the disciplinary decision. We are not so persuaded.

We note at the onset that, despite an assertion to the contrary, the University is not entitled to any deference in the interpretation of its governing rules. See Art. V, § 21, Fla. Const. ("In interpreting a state statute or rule, a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo."). In the context of second-tier certiorari, "[c]learly established law can be derived not only from case law dealing with the same issue of law, but also from 'an interpretation or application of a statute, a procedural rule, or a constitution provision.'" State Dep't of Highway Safety & Motor Vehicles v. Edenfield, 58

5

So. 3d 904, 906 (Fla. 1st DCA 2011) (quoting <u>Allstate Ins. Co. v. Kaklamanos</u>, 843 So. 2d 885, 890 (Fla. 2003)). Certiorari relief, however, "is not available when we might be confronted by simple legal error or when we might disagree with the appellate division's interpretation of applicable law." <u>Gables Ins. Recovery v. Progressive Exp. Ins. Co.</u>, 159 So. 3d 863, 865 (Fla. 3d DCA 2014).

Fundamental to due process is that the ultimate decision in any hearing be based upon evidence presented, which the accused has sufficient opportunity to refute. <u>Goldberg v. Kelly</u>, 397 U.S. 254, 270 (1970). To fulfill these requirements, a party is entitled to both "notice and a meaningful opportunity to be heard." <u>Pena v. Rodriguez</u>, 273 So. 3d 237, 240 (Fla. 3d DCA 2019); <u>see also</u> Amend. XIV, U.S. Const.; Art. I, § 9, Fla. Const.

Against these principles, in the context of student disciplinary proceedings, due process is satisfied by affording "adequate notice, an opportunity to be heard, and substantial evidence to support the penalty." <u>Student Alpha ID No. Guja v. Sch. Bd. of Volusia Cnty.</u>, 616 So. 2d 1011, 1012 (Fla. 5th DCA 1993). In this regard, students are not afforded the same safeguards as criminal defendants. <u>Id.</u> Rather, "[t]he due process requirement of a student administrative proceeding is that the proceeding

6

must be 'essentially fair.'" Matar v. Fla. Int'l Univ., 944 So. 2d 1153, 1160 (Fla. 3d DCA 2006) (quoting Student Alpha ID No. Guja, 616 So. 2d at 1013).

In Florida, institutions within the Florida College System are required to publish certain minimum due process protections in their respective codes of conduct. § 1006.60, Fla. Stat. (2021). As pertinent to this case, such protections shall include "[t]he right to present relevant information and question witnesses." § 1006.60(3)(e), Fla. Stat. In accord with these edicts, here, under the Code, the accused is permitted to present "relevant [w]itnesses and information at the hearing." Further, the student may question witnesses "in accordance with the Hearing Procedures." As relevant to this issue, the hearing officer is authorized to "place limits on the length of testimony" and "advise to the scope, direction or tone of questioning."

Our highest court has held "[t]he partiality of a witness is subject to exploration . . . and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" Davis v. Alaska, 415 U.S. 308, 316 (1974) (quoting 3A J. Wigmore, Evidence § 940, at 775 (Chadbourn rev. 1970)). Consequently, the right to cross-examine adverse witnesses as to bias and motive is a minimum requirement of due process. Morrissey v. Brewer, 408 U.S. 471, 471 (1972).

In the instant case, the incidents alleged by Ramos involving the teaching assistant were indubitably relevant to both bias and motive. The line of questioning was therefore authorized by the Code.

The University, argues, however, that under the Code, the SCC hearing officer had the discretion to "place limits on the length of testimony, and also, [could] advise to the scope, direction or tone of questioning." While this is a correct recitation of the Code, it cannot be read in isolation. Instead, the provision must be harmonized with the right of the accused to present relevant information and cross-examine witnesses.

Here, the testimony of the teaching assistant played a pivotal role in the proceedings. Consequently, evidence bearing on his bias and motive to fabricate charges may have influenced the minds of the factfinders as to whether he should be deemed credible. Under these circumstances, in concluding the refusal by the hearing officer to allow Ramos to develop her theory of defense undermined basic tenets of due process, the circuit court did not run afoul of clearly established law.

Accordingly, and mindful of the narrow scope of our review, we conclude certiorari relief is improvident. Ivey v. Allstate Ins. Co., 774 So. 2d 679, 682 (Fla. 2000); see Amanda Peters, The Meaning, Measure, and Misuse of Standards of Review, 13 Lewis & Clark L. Rev. 233, 235 (2009)

8

("When used properly, standards of review require appellate judges to exercise self-restraint and in so doing, act to create a more respected and consistent body of appellate law and a more efficient judicial system."); <u>Nader</u>, 87 So. 3d at 723 (quoting <u>Heggs</u>, 658 So. 2d at 526 n.4) ("[A]ppellate courts must exercise caution not to expand certiorari jurisdiction to review the correctness of the circuit court's decision. This would deprive litigants of the finality of judgments reviewed by the circuit court and ignore 'societal interests in ending litigation within a reasonable length of time and eliminating the amount of judicial labors involved in multiple appeals.'"); <u>see also</u> <u>Edenfield</u>, 58 So. 3d at 906 ("[A] misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law."); <u>Hous. Auth. of Tampa v. Burton</u>, 874 So. 2d 6, 9 (Fla. 2d DCA 2004) ("Unlike application of incorrect law, misapplication of correct law by a circuit court sitting in its appellate capacity generally does not constitute a violation of clearly established law resulting in a miscarriage of justice.").

     Petition denied.