[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12030

Non-Argument Calendar

_____

MARK JACOBY,
individually,

                                        Plaintiff-Appellant,

*versus*

CABLE NEWS NETWORK, INC.,
a Delaware corporation,
SARA MURRAY,
individually,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-01871-PGB-GJK

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiff Mark Jacoby appeals the district court order dismissing his claims of defamation and defamation by implication against Cable News Network (CNN) and Sara Murray (collectively, Defendants) for failure to state a claim. After careful review, we find that the district court did not err in dismissing Jacoby's claims. Accordingly, we affirm.

I.

Jacoby is the owner of Let the Voters Decide, a political petition circulation business. The business provides voter registration services as well as signature gathering services to secure ballot access for candidates and initiative petitions. Jacoby has stated that Let the Voters Decide is the largest network of professional petition circulators in the country.

In 2006 and 2007, Jacoby registered to vote at the address of his childhood home in Los Angeles, California, where he no longer resided at the time. During this period, Jacoby owned and operated a petition signature-collection and voter registration business

called Young Political Majors.  At that time, California law required petition signature-gatherers to sign a declaration that they were either registered to vote in California or were eligible to do so.  In 2008, the Los Angeles County District Attorney's office charged Jacoby with four felonies for registering to vote at an address where he did not live.  Jacoby pled guilty to a misdemeanor related to his registration at his childhood home instead of his actual home.  The other three charges were dismissed.

In 2020, Kanye West's presidential campaign hired Jacoby and his business to collect signatures on West's behalf in several states, including Florida.  In late 2020, CNN published two articles, both written by Murray, relevant to the present claim covering West's campaign.  On September 4, 2020, CNN published Murray's first article, entitled "Kanye West isn't going to be president, but his unconventional presidential bid forges on" (the First Article). The First Article contained the following statement, to which Jacoby took issue:

> Mark Jacoby, an executive at a company called Let The Voters Decide, is also helping the West campaign collect signatures in multiple states.  Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. A representative for the company said, "This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter and

any ongoing focus on it is misplaced and irresponsible."

Following the publication of the First Article, Jacoby contacted CNN to inform them that the First Article contained incorrect information. In particular, the First Article stated, "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party." Jacoby challenges this statement because he had in actuality pled guilty to the misdemeanor of registering himself to vote at his California childhood rather than his current address.

Jacoby's legal counsel subsequently demanded a correction. In its response to the demand letter, CNN identified three *LA Times* articles and a press release from the California Secretary of State to support its claims that Jacoby's plea was related to his work for the California Republican Party.

Following this exchange, CNN published a second article (the Second Article) on September 22, 2020, this time entitled "Kanye West's campaign has hired GOP operative with history of controversial work." The Second Article mostly detailed allegations of fraud associated with another organization with which West's campaign contracted for assistance in its ballot access effort. In relevant part, the Second Article mentioned again Jacoby's past felony criminal charges related to voter registration and his subsequent plea to a lesser misdemeanor charge but further expanded on how the authorities investigated Jacoby and his then-company, Young Political Majors. Despite Jacoby's representatives

repeatedly insisting that Jacoby's misdemeanor plea was not relevant to his political work, the Second Article insinuated the opposite. Jacoby demanded that Defendants retract or correct these critical statements. Defendants again refused.

On October 9, 2020, Jacoby sued Defendants in the Middle District of Florida. He filed his Amended Complaint on January 4, 2021. Defendants moved to dismiss on January 19, 2021. On May 6, 2021, the district court dismissed Jacoby's claims for defamation and defamation by implication for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In relevant part, the district court found that Jacoby is a limited public figure and thus must sufficiently plead that Defendants engaged in actual malice. Thus, the district court granted Defendants' motion because it consequently found that Jacoby failed to plead actual malice. The May 6, 2021 Order—a dismissal without prejudice—gave Jacoby two weeks to file a second amended complaint and stated that if Jacoby did not do so, the dismissal would become final and given prejudicial effect. Because Jacoby did not file a second amended complaint by May 20, 2021, the district court dismissed the case with prejudice on May 21, 2021. Jacoby timely appealed. On appeal, Jacoby challenges the district court's holding that Jacoby is a public figure and thus must sufficiently allege actual malice on the part of Defendants to validly state claims for defamation and defamation by implication, which the district court found that he failed to do.

II.

We review de novo the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Because we agree with the district court that Jacoby does not include enough facts to state a claim that would plausibly warrant relief, we affirm.

III.

Defamation and defamation by implication are state causes of action. As such, we apply Florida law here. Under Florida law, "[d]efamation has the following five elements: "(1) publication; (2) falsity; (3) [the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defamation by implication arises in instances in which "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, [the defendants] may be held responsible for the defamatory

implication unless it qualifies as an opinion, even though the particular facts are correct." *Id.* at 1108 (internal quotation marks omitted).

Whether a statement is defamatory is a question of law. *See Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018). We may not hold a defendant liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice. *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2424 (2021); *see generally N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270–83 (1964).

We find that Jacoby is a limited public figure for the purposes of this analysis, and consequently must adequately plead that Defendants acted with the requisite actual malice. Jacoby did not meet this burden. Because "[a]ll of the protections of defamation law that are afforded to the media and private defendants are . . . extended to the tort of defamation by implication," Jacoby's failure to plead actual malice also dispenses with his defamation by implication claim. *Rapp*, 997 So. 2d at 1108. We provide analysis below.

A.

Determining whether a plaintiff is a public figure, who is subject to the actual malice analysis, "is a question of law for the court to decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). "An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he

will be a public figure in any case—or for only limited purposes, where the individual has thrust himself into a particular public controversy and thus must prove actual malice in regard to certain issues." *Berisha*, 973 F.3d at 1310 (internal quotation marks omitted). The district court did not find, and Defendants do not argue, that Jacoby is a general public figure. However, the parties dispute on appeal whether Jacoby is a limited public figure. We agree with the district court that he is.

Limited public figures "have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Turner*, 879 F.3d at 1272. We therefore first consider whether there exists here a public controversy. *See Silvester v. Am. Broad. Cos. Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988). A public controversy concerns an issue that "had foreseeable and substantial ramifications for nonparticipants." *Id.* at 1495 (internal quotation mark omitted). Jacoby does not dispute that a public controversy exists in this case. There are two relevant public controversies here: (1) West's presidential campaign and related controversies, which include the efforts and legitimacy of the subcontractors with which it worked, and (2) allegations concerning the ethics with which Jacoby and his businesses, given the widespread nature of their work, have operated over time. Jacoby's brief acknowledges the public nature of both controversies. Both controversies undoubtedly have far-reaching impact on the public. We thus agree with the district court that this case involves matters of public concern.

Given that the existence of a public controversy is established, we now consider the two elements to determine whether Jacoby is a limited public figure: (1) whether Jacoby played a central role in the controversy, and (2) whether the challenged statements were germane to Jacoby's role in the controversy. *Berisha*, 973 F.3d at 1310.

Jacoby has a central role in both controversies. With respect to West's campaign, the record contains articles from several major networks reporting on his race and on issues related to West's effort to qualify for ballots, including the work of signature-gathering companies that West contracted with. Jacoby's work in the campaign has been covered or otherwise referenced by national outlets such as ABC News, *The New York Times*, and, central to this case, CNN. Jacoby himself has publicly weighed in on the campaign. The record contains articles from major news outlets in which he is quoted discussing topics related to West's 2020 presidential run. With respect to the ethical allegations against Jacoby and his businesses, Jacoby has described the allegations—including his 2008 arrest—as part of a "long pattern of harassment against [him] for an entirely valid voter registration effort." As a result, Jacoby acknowledges that he has often been the subject of reporting on his "politically-motivated public arrest." Jacoby's Amended Complaint indicates his active and voluntary participation in the relevant controversies as the head of "the largest network of professional petition circulators in the country." This role frequently places him and his business in the employ of politicians, whose very

jobs are to build and maintain a public presence.  As evidenced by the record, Jacoby has been offered and has accepted at least occasional opportunity to comment on public matters, has been the subject of public comment and coverage, and has proximity to those in power, including the politicians for whom he has worked and the media personnel with whom he has interacted.

Further, the statements at issue are germane to the controversies.  The Articles at issue concern West's campaign and Jacoby's involvement.  The statements that Jacoby identifies as defamatory concern Jacoby's 2008 California arrest for voter registration fraud.

We thus agree that Jacoby is a limited public figure for the same reasons that we found the plaintiff to be one in *Berisha*: "he was widely known to the public, he had been publicly linked to a number of high-profile scandals of public interest, he availed himself of privileged access to the . . . media in an effort to present his own side of the story, and he was in close proximity to those in power." *Id.* at 1311.

### B.

Because Jacoby is a public figure and the defamatory material involves issues of legitimate public concern, Jacoby must prove that Defendants acted with actual malice to establish liability.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989).  To plead actual malice, Jacoby must allege facts that, taken as true, would show that Defendants published the defamatory

material with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). This is not an objective test. Instead, our inquiry is whether Defendants entertained serious doubts about the truth of the published account or were otherwise "highly aware" that the account was likely false. *Michel*, 816 F.3d at 703. Even an "extreme departure from professional [publishing] standards" does not necessarily rise to the level of actual malice. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 665.

Actual malice demands factual allegations that allege more than a mere failure to investigate. *Id.* at 692. Instead, the factual allegations must show "that the defendant purposefully avoided further investigation with the intent to avoid the truth." *Michel,* 816 F.3d at 703. Further, where the publisher includes information that "gives readers sufficient information to weigh for themselves the likelihood of an article's veracity," this showing tends to undermine claims of actual malice. *Id.* Thus, the question here is whether Jacoby has plausibly alleged sufficient facts giving rise to a reasonable inference that Defendants published the statements with actual malice. We find that Jacoby does not.

Jacoby's brief is filled with conclusory allegations that Defendants "published the defamatory statements with actual malice and common law malice," including an allegation that Defendants "either knew that the statement [at issue] was false or recklessly disregarded the truth or falsity of the statement at the time it was made." Much of Jacoby's Amended Complaint makes similar conclusory allegations that Defendants reserved an intention to

fabricate or otherwise misrepresent facts concerning Jacoby and his business so that he would suffer resulting reputational harm. We do not credit such allegations. *See Turner*, 879 F.3d at 1273.

Taking only Jacoby's factual allegations, his claim rests simply on his allegations that Defendants failed to consider "the public records created during the course of [Jacoby's] California legal proceeding" or to heed "the admonitions of Plaintiff and Plaintiff's counsel" that the information upon which CNN relied in its publications concerning Jacoby was allegedly erroneous. He also claims that the Articles did not properly frame the statements from Jacoby's representatives denying the relevance of his 2008 misdemeanor to his political work in the Articles. But Jacoby is not entitled to having Defendants credit his preferred sources of information or structure its articles in the manner that he desires.

Again, even taking these facts as true, Jacoby must sufficiently plead facts tending to show that Defendants entertained serious doubts about the truth of the published account upon which their publications relied or were otherwise "highly aware" that the relevant account was likely false. *Michel,* 816 F.3d at 703. Not only does Jacoby not show this, but the facts that he does allege tend to demonstrate the contrary. In one example, Jacoby acknowledges that, with respect to CNN's reference of Jacoby's previous 2008 criminal charges, "Defendants *did* investigate . . . [and] tracked down three *LA Times* articles . . . and even uncovered an archived press release on the California Secretary of State's website." Jacoby does not allege any facts demonstrating that Defendants held

serious doubts about the truth of these sources or even about whether the sources actually supported the position that Defendants utilized them for, even if Defendants were ultimately incorrect. In another example, Jacoby cites sections of the Articles in which CNN shares statements from Jacoby's representatives rebutting the implication that his 2008 misdemeanor was related to his political work or that Jacoby's firm was linked to allegations of fraud against West's campaign. Further, the Second Article directly explains that "none of the allegations of fraud surrounding the West campaign have been directly tied to Jacoby or his firm." Indeed, these statements, "where the publisher include[d] information contrary to the general conclusions reached in [the] article . . . tend[] to undermine the claims of malice" that Jacoby makes. *See Michel*, 816 F.3d at 703.

Because Jacoby does not otherwise allege facts that plausibly state a claim that Defendants acted with actual malice, we affirm the district court's finding here.

IV.

In short, Jacoby alleges no facts upon which we could find that he has "state[d] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The judgment of the district court is thus affirmed.

**AFFIRMED**.