# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2025-0160
LT Case No. 2022-13300-CODL

_____

GREGORY LATTIMER,

    Appellant,

    v.

ERIC BABCOCK,

    Appellee.

_____


On appeal from the County Court for Volusia County.
Rachel D. Myers, Judge.

Gregory Lattimer, Deltona, pro se.

Douglas G. Rawnsley, of Rawnsley Law, Daytona Beach, for
Appellee.

May 1, 2026


EDWARDS, J.

During a homeowners' association ("HOA") meeting,
Appellant Gregory Lattimer, along with another HOA member
were introduced as two (2) new members of the HOA's board of
directors. At that point, Lattimer's neighbor, Appellee Eric
Babcock, told other HOA members at the meeting that they should
not allow Lattimer to serve as a board member. Babcock told those
present at the meeting, both in person and by virtual connection,

that Lattimer had harassed him, threatened to shoot him, and was being investigated for committing a hate crime against him. Babcock also told those at the HOA meeting that he was selling his house and moving due to Lattimer's conduct. Lattimer has sworn that Babcock's accusations are false and alleges in the underlying suit that in his effort to prevent Lattimer from serving on the HOA board, Babcock defamed him among friends, colleagues, and the community.

Initially, Babcock claimed the statements he made about Lattimer were true, but he later admitted he had no personal knowledge about the alleged shooting threat or hate crime. There is nothing in the record suggesting Babcock's accusations are true.

Babcock's opposed motion for summary judgment was granted based on the trial court's conclusion that he lacked actual knowledge of falsity and could not be found negligent in defaming Lattimer. The trial court reasoned that because Babcock claims that an unnamed code enforcement officer told him about the alleged shooting threat, while an unnamed, unidentified deputy sheriff allegedly told him that the supposed shooting threat was supposedly being investigated as a hate crime, as a matter of law, he acted reasonably in believing what he was told. As there were disputed issues of material fact and jury questions about whether Babcock could be found negligent, we reverse and remand for further proceedings.

*Background Facts*

On appeal from grant of summary judgment, the court of appeal reviews the evidence and all reasonable factual inferences in the light most favorable to the non-moving party; we also must resolve any reasonable doubts in the non-movant's favor. *Brevard County v. Waters Mark Dev. Enters., LC*, 350 So. 3d 395, 398 (Fla. 5th DCA 2022).

Lattimer asserts that this all started when his neighbor, Babcock, left his trashcans out on the sidewalk for more than a month. According to Lattimer, when he went to Babcock's house to ask him about the trashcans, he was met with a barrage of foul language and was told to leave. Lattimer swore in court

2

documents that was the first and only communication he ever had with Babcock before the HOA meeting.  Getting no relief there, Lattimer contacted someone from city code enforcement about the trashcans, who in turn contacted Babcock.  Before long, Babcock moved the containers from the sidewalk up next to his own house.  However, Babcock then parked his pickup truck and trailer in such a way as to block off Lattimer's mailbox for several days, preventing delivery of mail to his house.

Next, the HOA meeting described above took place.  Lattimer alleged in his complaint and affidavits that Babcock made those false statements about him during the meeting in an attempt to prevent Lattimer from being a board member of the HOA.  In his deposition, Babcock denied mentioning Lattimer by name during the meeting, claiming that he only referred to what a "neighbor" had done.  Elsewhere in his deposition, Babcock testified that he wasn't sure or couldn't remember whether he had said those things at the HOA meeting about Lattimer but finally said that he possibly could have made those statements.

Babcock admitted that he never heard Lattimer threaten to shoot him.  In his counterclaim, Babcock alleged that Lattimer's so-called threat about shooting him was made to the Volusia County Sheriff's Department but later claimed in his deposition that a city code enforcement officer heard it from Lattimer.  He testified in his deposition that it was the Volusia County Sheriff's Department that told him about a hate crime investigation supposedly based on Lattimer's alleged shooting threat.  When pressed on who specifically said that, Babcock admitted he didn't know the officer's name and didn't get a card from him.  He couldn't recall what he looked like, other than he believed that maybe one of the deputies was Hispanic; although he then quickly said he didn't remember his race.  Lattimer then questioned him further:

> Q. You don't remember his name? You don't
> remember the race? You don't remember anything
> about him?
>
> A. No.

3

Babcock agreed that he did not receive any follow-up from the sheriff's office. When asked in an interrogatory to identify those at the sheriff's office who made such statements, Babcock's answer was "unknown."

Lattimer swore in affidavits filed in the underlying case that he had never threatened Babcock. Lattimer swore that he never made a threat or told anybody that he was going to shoot Babcock. According to Lattimer, his only discussions with code enforcement were to initially report the trashcan problem, following which a code enforcement officer told him in person that the problem had been resolved. Lattimer swore that he had never engaged in, been accused of, or been investigated for any hate crime. As for his plans to sell his house and move, Babcock admitted in discovery that his house was already in pre-foreclosure due to being behind on his mortgage payments.

*Standard of Review*

Our standard of review for summary judgment is de novo. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). As noted above, "we consider the record evidence in the light most favorable to the non-movant, drawing all reasonable inferences in support of the conclusion that [Appellant] has raised a jury issue . . . ." *Ahmed v. Mid Fla. Dev., LLC*, 412 So. 3d 167, 178 (Fla. 5th DCA 2025) (quoting *Kimbrel v. Clark*, 385 So. 3d 1124, 1127 (Fla. 1st DCA 2024) (additional citation omitted)).

*Standards for Defamation Liability*

To prevail on his defamation claim, Lattimer must prove, *inter alia*, that in making the subject statements, Babcock acted with knowledge of, or reckless disregard for the falsity of the statements, or at least acted negligently as those statements concerned a private person, rather than a public figure or elected official. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Negligence refers to whether Babcock published the allegedly defamatory statements without exercising reasonable care to determine whether the statements were actually true or false. *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 378 (Fla. 3d DCA 1982). A defendant's failure to make reasonable attempts to

4

verify the accuracy of defamatory hearsay information can support a jury's finding of defamation. *Id.* at 388.

*Summary Judgment Standard*

Effective May 1, 2021, the Florida Supreme Court adopted what we still refer to as the "new" summary judgment standard, which is based upon Federal Rule of Civil Procedure 56 and related federal case law. *In re Amends to Fla. R. Civ. Pro. 1.510*, 309 So. 3d 192, 192 (Fla. 2020). "In adopting this amendment, [the supreme court] reaffirm[ed] the bedrock principle that summary judgment is not a substitute for the trial of disputed fact issues." *Id.* at 194. Summary judgment is to be granted only when the moving party has demonstrated that there is no genuine disputed issue of material fact, and the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510. Summary judgment is only available when the evidence "is so one-sided that one party must prevail as a matter of law[;]" it is not available when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Amends*, 309 So. 3d at 192–93 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986)). Even after adoption of the new summary judgment standard, "the general rule remains intact: credibility determinations and weighing the evidence are jury functions, not those of a judge . . . ." *Gracia v. Sec. First Ins. Co.*, 347 So. 3d 479, 482 (Fla. 5th DCA 2022) (internal quotation marks omitted).

Thus, the evidence before the court needs to be examined in order to decide whether granting summary judgment was appropriate. One way to evaluate the evidence in the instant case is by comparing it to the facts in a different case, *Karp v. The Miami Herald Publishing Co.*, 359 So. 2d 580 (Fla. 3d DCA 1978), involving a similar claim of a defendant learning of the defamatory statements from another person. The Karps sued the Miami Herald for publishing a statement asserting that they faced deportation after being charged with entering the country illegally. *Id.* at 582. In fact, no charges had actually been filed. *Id.* The undisputed evidence in *Karp* showed that an officer from the Immigration and Naturalization Service ("INS") called the reporter from the Miami Herald, "that the officer was well known to the reporter and had given the reporter accurate information in

5

the past." *Id.* at 581–82. It was pursuant to INS policy to disseminate such information. *Id.* at 582. The INS officer was identified, deposed, and testified that the newspaper article accurately reflected what he told the reporter. *Id.* "It also appears without conflict that the reporter made reasonable efforts to contact the plaintiffs for their version of the circumstances prior to publication." *Id.* Given those circumstances, the Third District affirmed the summary judgment granted in favor of the newspaper, as "there was no genuine issue of material fact concerning the absence of negligence." *Id.*

The evidence in the instant case concerning Babcock's claim that he was not negligent pales in comparison to the one-sided, crystalized facts in *Karp*. Babcock hemmed and hawed about whether he identified Lattimer by name, or even made the statements at the HOA meeting. Then, in his counterclaim, he asserted that Lattimer had made the threat about shooting him to the sheriff's department, only to later claim in his deposition that a code enforcement officer was the one who received the threat and told Babcock about it. Unlike the INS officer in *Karp* who was well known to the reporter, Babcock had no name or physical description for the deputy sheriff who supposedly told him about a hate crime investigation. Further, unlike the INS officer in *Karp*, Babcock testified that he received no follow up from the sheriff's department and basically recalled nothing about the deputy. Finally, as Lattimer argues, no affidavits were provided by the supposed declarants. Babcock offered no proof, other than his self-serving statements, that any deputy or code enforcement officer made the subject statements at all, much less in the manner he passed them along to those present at the HOA meeting. Those are credibility matters for a jury, given that neither declarant has confirmed Babcock's version.

Based on the evidence presented, we must ask in accordance with the new summary judgment standard, could a jury reach a verdict for Lattimer if it questioned whether Babcock indeed was ever told about a shooting threat passed on by a deputy that Babcock remembers nothing about? Could a jury return a verdict for Lattimer based on an evaluation of whether it was reasonable for Babcock to rely upon what, if anything, he had been told by a deputy sheriff who could not be identified and thus neither deposed

nor called to trial? And, unlike in *Karp*, there is nothing in the record now before this court that hints at any indicia of reliability for what, if anything, the code enforcement officer may have passed along to Babcock.

While we note that the trial court included in the order granting Babcock's summary judgment that the unidentified deputy and the code enforcement officer supposedly passed along the information to Babcock while acting in their "official capacity;" there is no evidence, as opposed to argument, in the record before this Court which supports that conclusion. In the current climate, must a jury or a court conclude as a matter of law, that it is reasonable, almost mandatory, to believe everything that every government employee might say, even in his or her official capacity, without questioning or making any effort to confirm its accuracy?

Based on the evidence set forth in the record currently before this Court, it was error to find that a reasonable jury could not return a verdict in favor of Lattimer; thus, summary judgment for Babcock was erroneously granted and is hereby reversed. The matter is remanded for further proceedings.

REVERSED and REMANDED.

WALLIS and MACIVER, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____